No. 25,723.

THE COMMERCIAL INVESTMENT COMPANY, *Appellee*, v.
CARL J. ANDERSON, *Appellant*.

### SYLLABUS BY THE COURT.

TRADE ACCEPTANCE — *Maker Chargeable With Knowledge of Contents — No
Fraud.* One who has capacity to purchase goods for a price of $900, and
who, after reading the instruments, signs three trade acceptances for $300
each and delivers them to the seller for the goods, is charged with knowledge
of the contents of the instruments, and may not avoid them on the ground
he did not understand them and was induced to forego inquiry respecting
them by fraudulent representations of the seller relating to their nature and
purpose.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed
February 7, 1925. Affirmed.

*R. B. Smith,* of Erie, and *C. M. Brobst,* of Chanute, for the appellant.

*T. R. Evans,* of Chanute, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a trade acceptance.
The district court directed a verdict for plaintiff, and defendant appeals.

The instrument sued on was in the following form:

<div style="border:1px solid black">

**TRADE ACCEPTANCE.**

No. 20811.                                              $300.00
                    NEW YORK, N. Y., Aug. 28, 1922.
    120 days after date pay to the order of Acme Stock Salt Co.,
        THREE HUNDRED . . . . . DOLLARS.
    The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.
To CARL J. ANDERSON,
            Chanute, Kansas.
Due: Dec. 26, 1922.          ACME STOCK SALT COMPANY,
                                By: K. ROCKEFELLER,
                                                Sec'y.

</div>

Across the end of the instrument and below the marginal words
"Trade Acceptance," appeared the following:

"Accepted
Date Aug. 28, 1922
Payable at Bank of Commerce
Chanute, Kans.
CARL J. ANDERSON."

After correspondence in which defendant was solicited to establish an agency for sale of the Acme company's products at Chanute, defendant met representatives of the company by appointment at Parsons. As the result of a conference, defendant purchased of the company 200 sacks of its stock tonic for the sum of $900, and gave the company for the goods three trade acceptances of $300 each, one of them being the instrument sued on. Defendant read the instruments before he signed them. He is a clerk in a wholesale grocery establishment, but before signing the instruments had neither seen nor heard of trade acceptances. All these facts were established by defendant's testimony. The defense was that the company's agents represented to defendant the instruments were needed to send to the company's manufacturing department to show what goods were to be shipped to defendant; that before signing the instruments defendant asked that he might show them to some one else, but was given the following assurances: "That I would be liable on nothing but the contract; that I would be responsible on nothing but the goods that would be shipped"; and that plaintiff did not understand the nature of the instrument—"I did not understand it to be any money paid; it was a trade acceptance for the goods."

Indorsement of the instrument sued on to plaintiff was not denied, and plaintiff's evidence was clear that it was a holder in due course. This evidence was not disputed, and defendant does not now question sufficiency of the evidence to establish the fact that plaintiff had no knowledge of any infirmity in the instrument or defect in the title of the company negotiating it. Defendant merely contends that fraud in the inception of negotiable paper may be set up against a holder in due course. Fraud in the inception of a negotiable instrument may be set up against one claiming to be a holder in due course, but proof of such fraud does not necessarily defeat the holder. The burden then rests on the holder to show that he had no knowledge of the fraud, and if he was without such knowledge he may recover. (R. S. 52-509, and cases cited in the annotation.)

The result of the foregoing is that, conceding the instrument was fraudulently obtained, the judgment of the district court was nevertheless well founded. Defendant may not, however, assert that the instrument was procured by fraud. He does not admit lack of capacity to contract for purchase of goods for the price of $900. He read the instrument before he signed it. It contained no description of goods or other recital which indicated what he says the drawer's

agents said it was to be given for. It made prominent the sum of $300, contained plain words used in common instruments expressing obligation to pay money, and disclosed a due date. Whatever the drawer's agent said about it, defendant was charged with knowledge of the contents of the instrument because he read it, and, having such knowledge, he is not permitted to deny understanding of its legal effect. If he were permitted to make such a denial, writings evidencing business transactions and particularly negotiable instruments, would be valueless.

The judgment of the district court is affirmed.